L. J. CHESTNUT v. ALBERT SUTTON.

(Filed 5 April, 1933.)

**1. Husband and Wife F c—Where husband assails wife's character in action for criminal conversation, the wife may testify to refute charges.**

In an action for criminal conversation wherein the husband has testified to immoral relations between his wife and the defendant, the wife is a competent witness for the defendant for the purpose of refuting the charges made against her character. C. S., 1801.

**2. Appeal and Error J d—**

Where the answers which the witness would have made if allowed to testify are not in the record an exception to the exclusion of such testimony will not be considered on appeal.

APPEAL by defendant from *Cranmer, J.,* at September Term, 1932, of SAMPSON. New trial.

This is an action to recover damages, both actual and punitive, for the alienation by the defendant of the affections of plaintiff's wife, and for his criminal conversation with her.

The issues submitted to the jury were answered as follows:

"1. Did the defendant, Albert Sutton, alienate the affections of plaintiff's wife, as alleged in the complaint? Answer: Yes.

2. Did the defendant, Albert Sutton, have immoral relations with plaintiff's wife, as alleged in the complaint? Answer: Yes.

3. What amount of actual damages, if any, is the plaintiff entitled to recover? Answer: $1,500.

4. What amount of punitive damages, if any, is the plaintiff entitled to recover? Answer: $500."

From judgment that plaintiff recover of the defendant the sum of $2,000, with interest from the date of the judgment, and the costs of the action, the defendant appealed to the Supreme Court.

*J. D. Johnson, Jr., for plaintiff.*
*Butler & Butler and R. D. Johnson for defendant.*

CONNOR, J. The plaintiff and his wife were married in Sampson County, North Carolina, on or about 9 May, 1928. They lived together as husband and wife until about 22 April, 1931, when they separated. They have since lived separate and apart from each other. A child was born of their marriage sometime during the month of January, 1929. This child is now in the care and custody of the plaintiff.

Evidence offered by the plaintiff tended to show that on 22 April, 1931, the defendant, who was the landlord of the plaintiff, had sexual

intercourse with plaintiff's wife, and that plaintiff immediately separated himself from his wife. Plaintiff testified that he had not lived with or had access to his wife since the date of their separation. His wife gave birth to a child on 12 February, 1932. Plaintiff testified that he was not the father of this child. There was evidence tending to show that the defendant was the father of the child born to plaintiff's wife, after her separation from him.

Annie Ruth Chestnut, wife of the plaintiff, was sworn and examined as a witness for the defendant. On her direct examination, she was asked the following questions:

"Q. Has your husband been to see you or spent the night with you since your separation?"

Plaintiff's objection to this question was sustained, and defendant excepted.

The record shows that if she had been allowed to answer the question, the witness would have replied:

"He has been to see me several times. I don't know exactly how many times, about twice a week up until this suit was started; up until about a month before the baby was born, 12 February, 1932."

"Q. Did he stay in the same room with you and spend the night with you?"

Plaintiff's objection to this question was sustained and defendant excepted.

The record shows that if she had been allowed to answer this question, the witness would have replied, "Yes, sir."

"Q. Your husband has testified that you had a child in February of this year, and has further testified that he has not seen or spoken to you for nine months preceding the birth of this child. Who is the father of that child?"

Plaintiff's objection to this question was sustained and defendant excepted.

The record shows that if she had been allowed to answer the question, the witness would have replied: "Lonnie Chestnut, my husband."

"Q. Is the defendant, Albert Sutton, the father of your child?"

Plaintiff's objection to this question was sustained and defendant excepted.

The record shows that if she had been allowed to answer this question, the witness would have replied, "No."

"Q. The witnesses, Earl Lewis, William Hall and William Thornton have testified that they saw you in the filling station in a compromising position with the defendant, Albert Sutton. State whether or not those statements are true."

Plaintiff's objection to this question was sustained and defendant excepted.

The record shows that if she had been allowed to answer this question, the witness would have replied: "No."

Defendant's assignments of error based on the foregoing exceptions must be sustained.

The allegations of the complaint in this action which constitute the causes of action on which the plaintiff seeks to recover of the defendant damages for the alienation of his wife's affections, and for his criminal conversation with her, involve charges against the wife of the plaintiff, which assail her character. Evidence offered by the plaintiff at the trial, tended to sustain these charges. Plaintiff's wife, was, therefore, under the express provisions of the statute (C. S., 1801), competent as a witness to testify in refutation of these charges, although the charges are founded upon her alleged adultery with the defendant, and although her testimony would be evidence against her husband.

Nothing in the statute, which provides that on the trial of an action the husband or wife of a party thereto shall, except as stated therein, be competent and compellable to give evidence as any other witness, renders the husband or wife competent to give evidence for or against the other in an action for criminal conversation, "except that in actions for criminal conversation brought by the husband in which the character of the wife is assailed, she shall be a competent witness to testify in refutation of such charges."

At the time of her marriage to the plaintiff, his wife was about 16 years of age. She was in the custody of the superintendent of public welfare of Sampson County, under charges made by her brother affecting her moral character. Negotiations were being conducted by the superintendent of public welfare for her admission into a reformatory maintained by the State for delinquent girls. There was evidence tending to show that she was married to the plaintiff to avoid confinement in the reformatory.

Whether or not it was competent for defendant to show by the testimony of plaintiff's wife that she had no affection for the plaintiff at the time of her marriage to him or thereafter, in mitigation of damages, is not presented on this appeal. It does not appear from the record what her answers would have been to the questions addressed to her by defendant's counsel, with respect to her affection for the plaintiff at the time of her marriage to him, or while she lived with him as his wife.

For error in excluding answers to questions addressed to plaintiff's wife as a witness for the defendant, for the purpose of refuting the charges made against her, which assail her character, there must be a

New trial.